UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BLAKE DANIEL HULLIHEN,

        Petitioner,                      Case No. 1:16-cv-1051

v.                                          Honorable Paul L. Maloney

PAUL KLEE,

        Respondent.
_____/

**OPINION**

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Promptly after the filing of a petition for habeas corpus, the Court must undertake a preliminary review of the petition to determine whether "it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court." Rule 4, RULES GOVERNING § 2254 CASES; *see* 28 U.S.C. § 2243. If so, the petition must be summarily dismissed. Rule 4; *see Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970) (district court has the duty to "screen out" petitions that lack merit on their face). A dismissal under Rule 4 includes those petitions which raise legally frivolous claims, as well as those containing factual allegations that are palpably incredible or false. *Carson v. Burke*, 178 F.3d 434, 436-37 (6th Cir. 1999). After undertaking the review required by Rule 4, the Court will dismiss the petition without prejudice for failure to exhaust available state-court remedies.

**Discussion**

I.  Factual allegations

Petitioner is incarcerated at the Gus Harrison Correctional Facility in Adrian, Michigan. He is serving two concurrent sentences of 37½ year to 75 years imprisonment for second-degree murder convictions, MICH. COMP. LAWS § 750.317, consecutive to two concurrent two-years sentences for possession of a firearm during the commission of a felony, MICH. COMP. LAWS § 750.227b. Petitioner was convicted by an Osceola County Circuit Court jury of murdering Gabrielle Woodworth, the mother of Petitioner's daughter, and Donald Feneis, Gabrielle's boyfriend. The Michigan Court of Appeals described the underlying facts as follows:

> Both victims were shot when they met with defendant at a Chuck's Corners gas station that had been the exchange point for defendant and Woodworth when transferring custody of their daughter. Woodworth was expecting to pick up her daughter at the time, but defendant had not bought her with him to that location.
>
> Defendant admitted to shooting both victims, but argued that he acted in self-defense. Defendant testified that Woodworth began yelling at him when he told her that he had not brought his daughter. Defendant further testified that Feneis exited his truck and "then him basically screaming at me, he's going to kill me." Defendant testified it was cold and dark and there were no lights on that portion of the gas station. He said Woodworth and Feneis "were coming towards me a little bit; I was backing up." Defendant testified that Feneis pulled something "shiny" and "black" out of his pocket . . . . When asked about the object from the pocket, defendant testified he "didn't know what it was for sure."
>
> Defendant did not remember who he shot or how many bullets he fired. Nor did he recall Woodworth falling to the ground and Feneis running away from him. He testified that when Feneis turned toward him, he "started shooting again" because he "thought [Feneis] still had a gun." When Feneis fell to the ground, defendant testified he backed away to his truck. He then left and headed back to his parents' home, where he told his father he had shot two people who had attacked him. Defendant's father accompanied him when he turned himself in to police.
>
> Evidence was presented at trial that Woodworth was shot eight times, including a total of five gunshot wounds to her face and neck. Woodworth was also shot three times in the torso. Feneis was shot eleven times, including three times in

the head and six times in the torso. Defendant's gun's magazine had an eight-round capacity and could carry one round in the chamber.

An eyewitness, Penny Savage, testified that she heard the gunshots and saw defendant shoot a man as he ran toward the store. She then testified that defendant inserted a new magazine in his gun and "very methodically walked up and emptied it" into the man's body lying on the ground. The eyewitness also testified that she did not hear any argument or altercation before the shooting started, and that defendant ran over the woman's body with his truck as he left the scene. Another eyewitness, Carl Asher, testified that he heard the gunshots, did not hear any argument or altercation beforehand, and saw the shooter drive off.

(Mich. Ct. App. Op., ECF No. 1-1, PageID.104-05.) At sentencing, the trial court departed upward from the guidelines. The court concluded that the guidelines limit of 100 points for offense variable failed to take into account the severity of the crime; accordingly, the court simply moved one cell beyond that which the guidelines otherwise provided and then sentenced Petitioner to the maximum minimum-sentence provided in that guidelines cell.

Petitioner filed a claim of appeal in the Michigan Court of Appeals. His initial brief, filed by counsel, raised essentially the following issues:

I.   In a murder case the manslaughter instruction is required where (1) there is a history of threats to kill defendant; (2) decedent pulled a small dark object from his pocket; (3) the prosecutor's summary of evidence to the jury argued from the evidence that defendant was "pissed"; (4) defendant's first statement after the shooting was that "I just lost it and started shooting and shooting; (5) there were 17 shots killing two people; and (6) defendant's testimony was that "I snapped or something, I swear it was a gun."

II.  In a self defense case based, inter alia, on uncontested evidence that one of the deceased pulled a dark object from his pocket, false argument by the prosecutor that there was no self defense because the defendant first shot the other person, requires a new trial.

III. At sentencing no specific reason and facts were articulated to justify the upward departure.

    IV.    Defendant's Sixth and Fourteenth Amendment rights were violated by judicial fact finding which increased the floor of the permissible sentence in violation of *Alleyne v. United States*, 133 S. Ct. 2151 (2013).

    V.    Defense counsel's failure to make proper objections and record was constitutionally ineffective assistance of counsel.

(ECF No. 1-1, PageID.15.) The court of appeals rejected each of Petitioner's claims of error and affirmed the trial court by unpublished opinion dated May 22, 2014. (Mich. Ct. App. Op., ECF No. 1-1, PageID.104-111.) Petitioner then filed a pro per application for leave to appeal in the Michigan Supreme Court which raised the five issues identified above, and two new issues:

    VI.    I was denied effective assistance of counsel because my attorney refused to/failed to investigate a meritorious insanity defense.

    VII.    A party may move for a new trial on the basis of new evidence.

(Pro Per Appl. for Leave to Appeal, ECF No. 1-1, PageID.125, 127.) The Michigan Supreme Court denied the application by order entered October 28, 2015. (Mich. Ord., ECF No. 1-1, PageID.155.) Petitioner then filed his petition in this Court raising the same seven issues he raised in the Michigan Supreme Court. (*See* Attachment C, ECF No. 1-1, PageID.17-22.)

    II.    <u>Exhaustion of State Court Remedies</u>

Before the Court may grant habeas relief to a state prisoner, the prisoner must exhaust remedies available in the state courts. 28 U.S.C. § 2254(b)(1); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). Exhaustion requires a petitioner to "fairly present" federal claims so that state courts have a "fair opportunity" to apply controlling legal principles to the facts bearing upon a petitioner's constitutional claim. *See O'Sullivan*, 526 U.S. at 842; *Picard v. Connor*, 404 U.S. 270, 275-77 (1971), *cited in Duncan v. Henry*, 513 U.S. 364, 365 (1995), and *Anderson v. Harless*, 459 U.S. 4, 6 (1982). To fulfill the exhaustion requirement, a petitioner must have fairly presented his federal

claims to all levels of the state appellate system, including the state's highest court. *Duncan*, 513 U.S. at 365-66; *Wagner v. Smith*, 581 F.3d 410, 414 (6th Cir. 2009); *Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990). "[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at 845. The district court can and must raise the exhaustion issue *sua sponte* when it clearly appears that habeas claims have not been presented to the state courts. *See Prather v. Rees*, 822 F.2d 1418, 1422 (6th Cir. 1987); *Allen*, 424 F.2d at 138-39.

Petitioner bears the burden of showing exhaustion. *See Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994). There is no question that Petitioner has raised issues I-V at all levels of the state courts. Issues VI and VII, however, have never been raised in the trial court or the Michigan Court of Appeals.

An applicant has not exhausted available state remedies if he has the right under state law to raise, by any available procedure, the question presented. 28 U.S.C. § 2254(c). Petitioner has at least one available procedure by which to raise the issues he has presented in this application. He may file a motion for relief from judgment under MICH. CT. R. 6.500 *et seq.* Under Michigan law, one such motion may be filed after August 1, 1995. MICH. CT. R. 6.502(G)(1). Petitioner has not yet filed his one allotted motion. Therefore, the Court concludes that he has at least one available state remedy. In order to properly exhaust his claim, Petitioner must file a motion for relief from judgment in the Osceola County Circuit Court. If his motion is denied by the circuit court, Petitioner must appeal that decision to the Michigan Court of Appeals and the Michigan Supreme Court. *See Duncan*, 513 U.S. at 365-66.

Because Petitioner has some claims that are exhausted and some that are not, his petition is "mixed." Under *Rose v. Lundy*, 455 U.S. 509, 522 (1982), district courts are directed to

dismiss mixed petitions without prejudice in order to allow petitioners to return to state court to exhaust remedies. However, since the habeas statute was amended to impose a one-year statute of limitations on habeas claims, *see* 28 U.S.C. § 2244(d)(1), dismissal without prejudice often effectively precludes future federal habeas review. This is particularly true after the Supreme Court ruled in *Duncan v. Walker*, 533 U.S. 167, 181-82 (2001), that the limitations period is not tolled during the pendency of a federal habeas petition. As a result, the Sixth Circuit adopted a stay-and-abeyance procedure to be applied to mixed petitions. *See Palmer v. Carlton*, 276 F.3d 777, 781 (6th Cir. 2002). In *Palmer*, the Sixth Circuit held that when the dismissal of a mixed petition could jeopardize the timeliness of a subsequent petition, the district court should dismiss only the unexhausted claims and stay further proceedings on the remaining portion until the petitioner has exhausted his claims in the state court. *Id.*; *see also Rhines v. Weber*, 544 U.S. 269, 277 (2007) (approving stay-and-abeyance procedure); *Griffin v. Rogers*, 308 F.3d 647, 652 n.1 (6th Cir. 2002).

Petitioner's application is subject to the one-year statute of limitations provided in 28 U.S.C. § 2244(d)(1). Under § 2244(d)(1)(A), the one-year limitations period runs from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." Petitioner appealed his conviction to the Michigan Court of Appeals and the Michigan Supreme Court. The Michigan Supreme Court denied his application on October 28, 2015. Petitioner did not petition for certiorari to the United States Supreme Court, though the ninety-day period in which he could have sought review in the United States Supreme Court is counted under § 2244(d)(1)(A). *See Bronaugh v. Ohio*, 235 F.3d 280, 283 (6th Cir. 2000). The ninety-day period expired on Wednesday, January 27, 2016. Accordingly, absent tolling, Petitioner would have one year, until January 27, 2017, in which to file his habeas petition.

The *Palmer* Court has indicated that thirty days is a reasonable amount of time for a petitioner to file a motion for post-conviction relief in state court, and another thirty days is a reasonable amount of time for a petitioner to return to federal court after he has exhausted his state-court remedies. *Palmer*, 276 F.3d at 781. *See also Griffin*, 308 F.3d at 653 (holding that sixty days amounts to a mandatory period of equitable tolling under *Palmer*).[1] Petitioner has more than sixty days remaining in his limitations period. Assuming that Petitioner diligently pursues his state-court remedies and promptly returns to this Court after the Michigan Supreme Court issues its decision, he is not in danger of running afoul of the statute of limitations. Therefore a stay of these proceedings is not warranted. Should Petitioner decide not to pursue his unexhausted claims in the state courts, he may file a new petition raising only exhausted claims at any time before the expiration of the limitations period.

## Conclusion

For the foregoing reasons, the Court will dismiss the petition for failure to exhaust available state-court remedies.

## Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This Court's dismissal of Petitioner's action under Rule 4 of the Rules Governing § 2254 Cases is a determination

---

[1]The running of the statute of limitations is tolled while "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2). The statute of limitations is tolled from the filing of an application for state post-conviction or other collateral relief until a decision is issued by the state supreme court. *Lawrence v. Florida*, 549 U.S. 327 (2007). The statute is not tolled during the time that a Petitioner petitions for writ of certiorari in the United Stated Supreme Court. *Id.* at 332.

that the habeas action, on its face, lacks sufficient merit to warrant service. It would be highly unlikely for this Court to grant a certificate, thus indicating to the Sixth Circuit Court of Appeals that an issue merits review, when the Court already has determined that the action is so lacking in merit that service is not warranted. *See Love v. Butler*, 952 F.2d 10 (1st Cir. 1991) (it is "somewhat anomalous" for the court to summarily dismiss under Rule 4 and grant a certificate); *Hendricks v. Vasquez*, 908 F.2d 490 (9th Cir. 1990) (requiring reversal where court summarily dismissed under Rule 4 but granted certificate); *Dory v. Comm'r of Corr.*, 865 F.2d 44, 46 (2d Cir. 1989) (it was "intrinsically contradictory" to grant a certificate when habeas action does not warrant service under Rule 4); *Williams v. Kullman*, 722 F.2d 1048, 1050 n.1 (2d Cir. 1983) (issuing certificate would be inconsistent with a summary dismissal).

The Sixth Circuit Court of Appeals has disapproved the issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* at 467. Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard.

This Court denied Petitioner's application on the procedural ground of lack of exhaustion. Under *Slack*, 529 U.S. at 484, when a habeas petition is denied on procedural grounds, a certificate of appealability may issue only "when the prisoner shows, at least, [1] that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and [2] that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Both showings must be made to warrant the grant of a

certificate.  *Id.*  The Court finds that reasonable jurists could not debate that this Court correctly dismissed the petition on the procedural ground of lack of exhaustion. "Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further."  *Id.*   Therefore, the Court denies Petitioner a certificate of appealability.

       A Judgment consistent with this Opinion will be entered.


Dated:   September 15, 2016                             /s/ Paul L. Maloney
                                                             Paul L. Maloney
                                                             United States District Judge